IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL J. N,

   Plaintiff,

  v.

FRANK BISIGNANO, *Commissioner of Social Security*,

   Defendant.

1:25CV455

## ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

The plaintiff, Michael J.N. ("Michael"), has sought review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income.[1] The Court has considered the certified administrative record and dispositive briefs from each party. Because the Administrative Law Judge's ("ALJ") decision is legally correct, supported by substantial evidence, and susceptible to judicial review, the Court affirms the decision of the ALJ, as set forth below.

## I. PROCEDURAL HISTORY

In January of 2020, Michael filed an application for supplemental security income alleging a disability onset date

of January 1, 2018. (Tr. 263-69.) The application was denied initially and upon reconsideration. (Tr. 127-30, 133-34.) After a hearing, the ALJ issued an unfavorable decision on May 24, 2023. (Tr. 105-117.) On August 30, 2023, the Appeals Council remanded the case because the ALJ admitted evidence into the record without also proffering it to Michael. (Tr. 122-25.) The same ALJ had a new hearing, proffered the evidence properly, and then determined on June 11, 2024 in a new decision that Michael was not disabled under the Act. (Tr. 17-32.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review. (Tr. 1-6.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 5. By Order of Reference, this matter was referred to the

Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). *See* Docket Entry 13.

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Michael is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 416.920, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470,

472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

Here, the ALJ determined at step one that Michael had not engaged in substantial gainful activity since January 9, 2020, the application date. (Tr. 19.) The ALJ next found the following severe impairments at step two: "obesity, lumbar and right thumb arthralgias, post-traumatic stress disorder (PTSD), borderline intellectual functioning, antisocial

2

personality disorder, and cannabis use." (Tr. 19.) The ALJ then found that Michael did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 19.)

The ALJ next set forth Michael's Residual Functional Capacity ("RFC") and determined that he could perform medium work

> except he can frequently handle and finger [and] understand, remember, and carry out simple instructions. They can be detailed but not complex. [He] can focus on tasks for two hours at a time, learned by demonstration in 30 days or less. He cannot have contact with the public and only occasional contact with co-workers and supervisors. He is capable of routine changes but cannot perform work with daily quotas.

(Tr. 21.)

At the fourth step, the ALJ determined that Michael was unable to perform his past relevant work. (Tr. 29.) Last, at step five, the ALJ concluded that there were other jobs that Michael could perform. (Tr. 29.)

IV. DISCUSSION

Michael first contends that "[t]he ALJ erred in discounting all the medical opinion evidence of record, leaving the ALJ's assessment of [his] RFC unsupported by substantial evidence." Docket Entry 9 at 3. Second, Michael contends that "[t]he ALJ erred in discounting the severity of [his] mental impairments based on limited treatment when the evidence of record demonstrates [he] faced mental deficits and financial constraints that limited his ability to obtain treatment." *Id.* at 16. As set forth below, neither objection has merit.

A. Standard for the RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 416.945; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC assessment

3

must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm. of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). Thus, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)

(alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Beyond this, the longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed. *See* 20 C.F.R. § 416.920c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* Nevertheless, an ALJ must consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 416.920c(b). When a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings as a class. *See id.* § 416.920c(b)(1). The ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 416.920c(b)(2). Supportability is an

4

internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 416.920c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical opinions, or prior administrative medical findings about the same issue, are equally persuasive in terms of supportability and consistency. *Id.* §§ 416.920c(b)(3), 416.920c(c)(3)-(5).

Furthermore, "[s]tatements that [claimants] are or are not disabled, . . . able to work, or able to perform regular or continuing work," are statements on an issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3). Under the revised regulations, statements on issues reserved to the Commissioner are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3). For such claims, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

B. The RFC Finding Is Legally Correct and Well Supported.

Michael contends that "[t]he ALJ erred in discounting all the medical opinion evidence of record, leaving the ALJ's assessment of [his] RFC unsupported by substantial evidence." Docket Entry 9 at 3. He contends further that "the ALJ discounted every medical opinion regarding [his] psychological RFC and provided invalid reasons for doing so." *Id.* at 12. As a result, Michael concludes, the ALJ's RFC determination is "based on the ALJ's own interpretation of the medical evidence of record." *Id.* As explained below, this objection lacks merit.

The RFC constitutes an administrative finding, not a medical assessment, and the responsibility for assessing a plaintiff's RFC rests solely with the ALJ. *See* 20 C.F.R. § 404.1546(c). As a result, "[t]he ALJ was not required to obtain an expert medical opinion as to [Michael's]'s RFC," *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (unpublished), or to rely upon a specific medical opinion in fashioning the RFC, *see Wykle v. Saul*, No. 1:19CV155, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020) ("[T]here is no requirement that an ALJ base his RFC finding, or any particular limitation in it, on a medical opinion") (citing *Felton-Miller*, 459 F. App'x at 230-31). *See also Moore v. Colvin*, No. 15CV425, 2016 WL 1714117 (D.S.C. Apr. 29, 2016) ("[T]he ALJ is not required to rely on medical opinions to formulate an RFC assessment, as the 'ALJ is not

5

precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision[.]'") (quoting *Chandler v. Commissioner of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011)); *Howze v. Kijakazi*, No. 4:23-CV-00061, 2024 WL 1919203, at *4 (S.D. Tex. May 1, 2024) ("[T]he mere fact that the ALJ did not find any medical opinions persuasive is not reversible error.").

Put differently, an ALJ's decision not to fully adopt any of the medical opinions in the record alone does not establish improper substitution his/her lay opinion. *See Mark A. B. v. Kijakazi*, No. 1:22CV834, 2023 WL 9381904, at *8 (M.D.N.C. Dec. 15, 2023) (collecting cases). Where the ALJ discussed medical and nonmedical evidence leading to the RFC assessment, specifically addressing each relevant impairment, the ALJ's decision was supported by substantial evidence.[2]

i. Dr. Felix Ortiz, Psy.D.

Consultative examiner Dr. Felix Ortiz, Psy.D., evaluated Michael on March 9, 2011, Tr. 427-30, and the ALJ summarized it thus:

On March 9, 2011, the claimant saw Dr. Ortiz for a psychological consultative evaluation. He drove to the appointment with his girlfriend. The claimant's speech was unremarkable, and the quality of his

speech was unremarkable. Overall, the content of the claimant's speech was noted to be relevant, coherent, and logical. His attitude was positive, and level of cooperation and effort were positive and appropriate. He was able to answer all questions presented and was able to give specific information and dates without difficulty. He alleged depressed mood, loss of interest in activities, irritability, sleep disturbances, appetite disturbances, loss of energy, psychomotor agitation or retardation, all of which started after his grandmother's death in 2008. He alleged symptoms from PTSD that began in childhood. He also alleged witnessing murders in prison, including when he saw someone cut a guy's head off and he watched it roll across the floor. He had been in prison for 14 years and he was released in 2010. He alleged attempting suicide in prison. The claimant was diagnosed with major depressive disorder, PTSD, borderline personality disorder, and cannabis abuse, and was noted as having a history of trauma.

Dr. Ortiz noted that the claimant's symptoms appeared to be severely impacting his activities of daily living, vocational performance, and interpersonal interactions (Exhibit 2F). This opinion is unpersuasive as it is far removed from the relevant period and vague, not noting specific functional limitations rather noting that the claimant's symptoms severely

---

[2] Because Michael is only challenging his mental RFC determination, the Court

limits its analysis accordingly herein.

impact his functioning. The examiner appeared to base his findings on the claimant's subjective reports and not the examination. As this opinion is far removed from the relevant period and vague, it is unpersuasive.

(Tr. 23 (paragraph break inserted).)

The ALJ did not err in concluding that Dr. Ortiz's opinion was unpersuasive. He generated it years before the 2018 alleged onset date and the 2021 date of Michael's application for SSI. It therefore provides limited insight regarding Michael's condition during the relevant period. Courts in the Fourth Circuit have found no error in ALJ decisions deeming medical opinions predating the alleged onset date to be of limited relevance. *See Tianna B. v. Kijakazi*, No. 2:22CV392, 2023 WL 3743879, at *8 (E.D. Va. Apr. 26, 2023) (collecting cases). Additionally, under both the

old and new regulations regarding ALJ analysis of medical opinions, vagueness as to vocational limitations is grounds for an ALJ to discount a medical opinion in whole or in part.[3]

Beyond this, an ALJ may also discount medical opinions based on a claimant's subjective complaints, which is what the ALJ did here. *See* 20 C.F.R. § 416.920c(c)(1)-(2).[4] In support thereof, the ALJ pointed to a considerable amount of record evidence inconsistent with Dr. Ortiz's opinion, to the extent it set forth work preclusive limitations.

For example, prior to his application date, Michael received infrequent mental health treatment while he was in prison (Tr. 22, 396-424), and during the relevant period, he neither required psychiatric hospitalization nor did he receive mental health treatment.[5] (Tr. 25, 28, 48-49, 59.)

---

[3] *See, e.g., Wesley v. Kijakazi*, No. 1:20CV364, 2021 WL 4129234, at *11 (M.D.N.C. Sept. 9, 2021) ("Vagueness constitutes a permissible grounds for an ALJ to discount a medical opinion. ") (collecting cases); *Betty C. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-CV-00246-JMC, 2023 WL 7386206, at *5 (D. Md. Nov. 8, 2023) (collecting cases); *Samuel P. v. Comm'r of Soc. Sec.*, No. 20-5881, 2021 WL 5769404, at *6 (W.D. Wash. Dec. 6, 2021); *Langford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00665-CEH, 2023 WL 3058160, at *26 (N.D. Ohio Apr. 24, 2023); *Chiccola v. Comm'r of Soc. Sec.*, No. 1:18 CV 2940, 2020 WL 1031488, at *8 (N.D. Ohio Mar. 3, 2020) (internal citations omitted) (collecting

cases).

[4] *See also, e.g., Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1986) ("All Keller gave here was a conclusory opinion based upon Craig's subjective reports of pain."); *Cummings v. Comm'r of Soc. Sec.*, 2023 WL 8945826, at *2 (4th Cir. 2023) ("Dr. Perkis based that statement solely on Cummings's reported symptoms rather than objective evidence[.]"); *Wood v. Comm'r of Soc. Sec. Admin*, 2022 WL 997306, at *2 (4th Cir. 2022).

[5] There is record evidence that Michael received about an hour of mental health

Michael also opted to use marijuana daily (up to seven times per day) rather than psychotropic medications for his mental health symptoms. (Tr. 23-25, 27). The record showed that Michael flushed his medications down the toilet, stopped taking them due to side effects, or refused to take them because he did not believe in them (Tr. 22, 402, 24, 48-49, 294 ("[H]e doesn't believe in taking medications, said even if he was prescribed medication he wouldn't take it 'unless it's marijuana I'm not taking it'."), 459, 462.) He reported that only marijuana helped his mood. (Tr. 23, 24, 27, 451, 459, 462, 532, 542, 549.)

Michael's mental status examinations were also normal. (Tr. 21, 24-25, 460-62, 466-68, 500, 513, 540, 546-47, 553-54.) Apart from some mild irritability, he generally demonstrated normal appearance, orientation, memory, recall, thought processes, behavior, speech, cooperation, and attention/concentration. (Tr. 21, 24-

25, 336, 460-62, 464, 466-68, 500, 513, 540, 546-47, 553-54.)

Michael also engaged in a wide array of daily activities despite his mental impairments. (Tr. 22, 24, 27.) He lived in a home with his longtime girlfriend, drove, cared for his personal needs, cared for his dog, shopped in stores, cleaned, cooked, went to bars, went to the racetrack with his neighbor, and socialized with friends (Tr. 22, 24, 27, 43, 52-53, 459, 466, 331-46.) He also maintained membership in a motorcycle club where he spent time riding motorcycles, painting clubhouses, and "chilling" with people in the motorcycle club world. (Tr. 24, 459, 462.) For all these reasons, the ALJ did not err in finding Dr. Ortiz's opinion unpersuasive to the extent it set forth work preclusive limitations.

### ii. Crystal Ray, M.A, LPA

Consultative examiner Crystal Ray, M.A., LPA examined Michael on

---

care during the relevant multi-year period at issue. He visited with Daymark Recovery Services, Inc. for a clinical psychological assessment on December 12, 2023 for 35 minutes and a follow up on December 20, 2023 for 31 minutes. (Tr. 539-50.) Given that the ALJ examined this evidence extensively (Tr. 25), his conclusion that Michael received "no mental health treatment" rather than "almost no mental health treatment" or "about an hour of mental health treatment" is sound. Additionally, any argument that the ALJ improperly penalized Michael for failing to seek more treatment is unpersuasive. And, in

any event, even if the ALJ somehow erred in this regard (which is not the case), the error here would be harmless given all the other evidence the ALJ cited for discounting the medical opinions described herein. *See Pratt v. Kijakazi*, No. 1:20CV679, 2021 WL 4975405, at *4 n.4 (M.D.N.C. Oct. 6, 2021) ("[E]ven assuming for the sake of argument that Plaintiff is correct here, any error is harmless given all the other reasons the ALJ provided—all of which are discussed above—that warrant discounting Dr. McLemore's opinion.").

8

September 5, 2020, Tr. 457-63, and the ALJ assessed her opinion as follows:

After the application date, on September 5, 2020, the claimant saw Crystal Ray, Licensed Psychological Associate (LPA), for a psychological consultative evaluation. The claimant drove himself to the exam and was accompanied by his girlfriend. He reported living with his girlfriend for 11 years, and he lived in a house his grandfather gave him. The claimant ambulated normally, his hygiene and grooming were fair, he was cooperative and interacted appropriately, but was noted as making minimal eye contact and looked at the floor when not speaking. However, when speaking the claimant's speech was clear, he spoke loudly and was quite demonstrative and expansive in his responses. He reported getting angry easily and having problems with authority. The claimant reported trying to get a job but that no one wanted to give him work. The claimant reported joining a motorcycle club 3 months ago and spending a lot of time out on motorcycles, painting clubhouses, and "chilling" with people in the motorcycle club world. He did have pending charges of speeding and operating a motorcycle without

an endorsement. He reported that the previous day he had gone to a bar and then visited a friend. The claimant reported smoking marijuana daily which he believes helps with his mood and reported that he refuses to take medications. However, the claimant reported depressed mood "all the time" with irritability, tearfulness, poor motivation, poor energy, poor sleep, and decreased appetite.

The claimant's mental status exam was grossly normal, with mood noted as the claimant describing his mood as "alright until somebody says something stupid;" the claimant's insight was noted as appearing poor, but otherwise mental status exam was normal. His thought processes were logical, coherent, and goal directed. The claimant was diagnosed with antisocial personality disorder, cannabis use disorder. Ms. Ray found that the claimant would have no difficulty understanding, retaining, and following simple instructions. She opined he would have trouble sustaining attention to perform simple repetitive tasks. He would also demonstrate difficulty tolerating stress and pressures of day-to-day work activities. She opined his biggest problem would be in relating to and getting along with co-workers and supervisors (Exhibit 6F).

9

This opinion is vague and speculative, noting that the claimant would have a big problem with social interaction and difficulty in tolerating stress; these terms are not defined and overly vague, and therefore unpersuasive. The mental status evaluation was essentially normal and she appeared to base her restrictions on his subjective statements. Due to the vague nature of these opinions finding consistency and supportability is difficult as the degree of limitation is unknown, it is not persuasive.

Tr. 24 (paragraph breaks inserted).

The ALJ gave good reasons for finding this opinion unpersuasive. As noted, vagueness constitutes a permissible grounds for an ALJ to discount a medical opinion in whole or in part. Ms. Ray's assertions that Michael would have "trouble," "difficulty," and a "big[] problem" in various functional domains (*i.e.*, sustaining attention, social interaction, tolerating stress) did not use vocationally relevant terms. (Tr. 24.) In any event, deficits in these domains were also accommodated in vocationally relevant terms in the RFC finding that the ALJ ultimately adopted. (Tr. 21.)

Likewise, the ALJ provided additional support for discounting Ms. Ray's opinion: she based her restrictions on Michael's subjective statements, despite grossly normal mental status

reports (Tr. 21, 24-25, 460-62, 466-68, 500, 513, 540, 546-47, 553-54) as well as Michael's admission to performing a wide array of daily activities, such as joining and participating extensively in a motorcycle club (Tr. 22, 24, 27, 43, 52-53, 459, 466, 331-46). An ALJ may discount opinion evidence in the face of contradictory evidence or when that opinion is based on no more than a claimant's subjective allegations, which is what the ALJ did here. There was no error in this assessment.

### iii. Dr. Julia Brannon, PhD

Consultative examiner Dr. Julia Brannon, PhD evaluated Michael on August 2, 2021, Tr. 464-68, and the ALJ assessed her opinion as follows:

On August 2, 2021, the claimant saw Dr. Brannon for a psychological consultative evaluation. The claimant was accompanied by his girlfriend of 12 years, was casually dressed, was cooperative in answering questions although he was noted as answering impulsively and with irritation at times. He stated that the examiner had denied his disability since he had been there before. The claimant reported having a motorcycle accident in 2020 and going to the emergency room but having no ongoing treatment. During the evaluation the claimant was noted as irritable and tense. The claimant was diagnosed with PTSD, unspecified

Case 1:25-cv-00455-JGM    Document 15    Filed 05/06/26    Page 10 of 21

personality disorder with antisocial traits, and rule out cannabis use disorder. Dr. Brannon found that the claimant could understand, retain, and follow simple instructions, but has more difficulty with sustaining attention and concentration and focus, and is able to manage and retain information and perform duties in a sustained manner. The claimant demonstrated lo[t]s of impulsivity and difficulty with managing his temper and is aggressive towards others. The claimant could perform daily living skills and self-care skills, but his social skills and judgment are below average (Exhibit 7F).

The undersigned finds this opinion partially persuasive, as while some of the opinions have support, finding that the claimant has difficulty managing his temper and is aggressive to others is inconsistent with the claimant's reports of being in a motorcycle club, doing club activities, and testifying that he can shop twice a week. Furthermore, the undersigned notes that the claimant's reports of temper and aggressiveness are subjective reports, while the claimant has not been noted as aggressive nor exhibited any mental difficulties or symptoms during physical and mental

health treatment throughout the relevant period (Exhibits 8F; 9F; 13F). Furthermore, the claimant has no mental health treatment and no hospitalizations (for mental health), which does not support this level of limitation.

(Tr. 24-25 (paragraph break inserted).)

The ALJ found Dr. Brannon's opinion only partially persuasive. First, the ALJ relied upon evidence of Michael's extensive social activities to discount Dr. Brannon's conclusion that Michael was unable to manage his temper and aggression towards others. (Tr. 25, 52-53, 459, 466, 335, 342.) Second, the ALJ pointed to Michael's grossly normal mental status reports, which did not demonstrate aggression, mental difficulties, or symptoms not otherwise accounted for by the RFC. (Tr. 25, 336, 460-62, 464, 466-68, 500, 513, 540, 546-47, 553-54.) Third, the ALJ noted that Michael had essentially no mental health treatment and no hospitalizations for mental health related issues during the relevant period. (Tr. 25.) Thus, the ALJ's assessment of Dr. Brannon's opinion is legally correct and well supported.

### iv. Dr. John Smith, M.D.

Dr. John Smith, M.D. performed a March 18, 2024 consultative examination on Michael, which the ALJ assessed as follows:

John R. Smith, M.D., consultative examiner, evaluated the claimant on March 18, 2024 (Exhibit 14F). The claimant was driven to the examination by a Medicaid services van, since he told the provider he did not have a valid license since his release from prison. His girlfriend was with him. He alleged he was not given any medication while incarcerated that he could recall. The claimant reported issues with anger management and PTSD symptoms.

Upon exam, he was pleasant and cooperative and was noted to be quite talkative. His stream of mental activity was spontaneous, but he could be circumstantial though he generally responded well to redirection. He gives no evidence of hallucinations or delusional thought and has no homicidal or suicidal thought. His mood and affect were somewhat irritable. The claimant was oriented with regard to time, person, place and situation. He could repeat three out of three words immediately and recall all three words after a few minutes. He could name the current President and the number of states in the United States. He can state correctly that 100 minus 7 would be 93 but then states that 93 minus 7 would equal 84. He could state

correctly that a quarter and a dime would total 35 cents. An estimate of the claimant's intellectual level of functioning was within the average range. His ability to sustain concentration was reasonable. Dr. Smith opined the claimant could understand, retain and follow instructions on a general basis though he would likely easily become distracted and have difficulty focusing. He felt it was unlikely that he could sustain attention for long periods of time to perform simple, repetitive tasks and could not relate to others, including fellow workers and supervisors, as he has low frustration tolerance, easy irritability and for the same reasons would likely not be able to tolerate the stress and pressure associated with day-to-day work activity.

This opinion is partially persuasive. It is somewhat supported by Dr. Smith's exam but not completely. For example, the claimant was generally pleasant and cooperative. His mood and affect were only "somewhat irritable." Dr. Smith appears to have relied mostly upon the claimant's subjective statements regarding his symptoms. Further, the opinion is inconsistent with the claimant's relatively normal presentation at other exams

Case 1:25-cv-00455-JGM    Document 15    Filed 05/06/26    Page 12 of 21

(Exhibit 8F; 9F; 13F). Regular mental status exams only noted a mildly blunted mood/affect and were otherwise normal (Exhibit 13F).

(Tr. 25-26 (paragraph break inserted).)

The ALJ found Dr. Smith's opinion only partially persuasive. First, the ALJ rejected Dr. Smith's conclusion that Michael could not relate to others in a work environment because it was based on Michael's subjective allegations and at odds with Smith's conclusion that Michael was generally pleasant and cooperative upon examination and only "somewhat irritable." (Tr. 26, 460, 466, 540, 547, 553, 432-33, 402, 451.) This conclusion was also inconsistent with Michael's relatively normal presentation at other exams and grossly normal mental status exams. (Tr. 26, 460-62, 464, 466-68, 500, 513, 540, 546-47, 553-54.) Beyond this, Michael participated in a wide array of daily activities (Tr. 22, 24, 27, 43, 52-53, 459, 466, 331-46) and had essentially no mental health treatment and no hospitalizations for mental health related issues during the relevant period. For all these reasons, the ALJ's assessment of Dr. Smith's opinion is legally correct and well supported.

> v. Drs. Jacquelyn Harrison, PhD and Bonny Gregory, M.D.

The ALJ also assessed the prior administrative medical findings of the non-examining state agency mental health professionals, Drs. Harrison and Gregory, as follows:

> Dr. Harrison, the state agency consulting physician who reviewed the medical records available on October 2, 2020, found that the claimant could understand and remember simple instructions, but [sic] "likely have" difficulty with detailed instructions; could concentrate and persist on simple tasks; would "likely function best" in a setting that does not require social contact; and could adapt to a setting that does not require simple tasks. Dr. Harrison also noted in another area that the claimant was able to perform simple, routine, repetitive tasks (Exhibit 2A).

> Dr. Gregory reiterated the same limitations as Dr. Harrison; however, Dr. Gregory also noted that the claimant could understand, retain and follow simple instructions. He has more difficulty with sustaining attention and concentration and focus and is able to manage and retain information and perform duties in a sustained manner. He does demonstrate lo[t]s of impulsivity and difficulty with managing his temper and is aggressive towards others. He can perform daily living skills and self-care skills, but his social skills and judgment are below average

Case 1:25-cv-00455-JGM    Document 15    Filed 05/06/26    Page 13 of 21

(Exhibit 3A).

The undersigned notes that these opinions are internally inconsistent, at one point noting that the claimant is capable of work limited to simple, routine, repetitive tasks; and at another point noting that the claimant cannot perform work that requires adapting to simple tasks. The undersigned finds these opinions somewhat unpersuasive, as while some of the opinions have support, finding that the claimant can adapt to a setting that does not require simple tasks appears to suggest that the claimant could not work and adapt to a simple work environment, but both consultants found that the claimant could work. The undersigned notes that the claimant's reports of temper and aggressiveness are subjective reports, while the claimant has not been noted as aggressive or any mental difficulties or symptoms during physical treatment in December 2020, December 2021, and early 2022 (Exhibits 8F and 9F). Furthermore, the

claimant has no mental health treatment, which does not support this level of limitation.

(Tr. 28 (paragraph break inserted).)

The ALJ found Drs. Harrison and Gregorys' opinions somewhat unpersuasive. First, as the ALJ correctly pointed out, these opinions are internally inconsistent, at one point noting that Michael is capable of work limited to simple, routine, repetitive tasks; and at another point noting that he cannot perform work that requires adapting to simple tasks.[6] (Tr. 28.)

Second, the ALJ accurately pointed out that Michael had not presented as aggressive or having work preclusive mental difficulties or symptoms during his physical treatment. (Tr. 28, 471-523, *see also* Tr. 460-62, 464, 466-68, 500, 513, 540, 546-47, 553-54.) Third, the ALJ pointed to Michael's lack of mental health treatment as another reason for partially rejecting the non-examining state agency opinions. (Tr. 28.) Fourth, elsewhere in the decision, the ALJ also pointed to Michael's extensive activities of daily living. (Tr. 22, 24, 27, 43, 52-53, 459, 466, 331-46.) The ALJ's assessment of Drs.

---

[6] The state agency experts' reports appear to contain a typographical error that should have stated Michael "can adapt to a setting that requires simple tasks" rather than "[c]an adapt to a setting that does not require simple tasks." (Tr. 84, 98.) Elsewhere in their reports, the consultants stated that "[b]ased on

totality of evidence in file, [Michael] has a severe mental impairment that imposes functional limitations on day-to-day activities but not great enough to preclude all work. [Michael] is able to perform [simple, routine, repetitive, tasks]." (Tr. 80, 95.)

14

Harrison and Gregorys' opinions is legally correct and well supported.

### vi. Michael's Objections to the Contrary Are Not Persuasive.

Michael's objections to the contrary are not persuasive. He contends that the ALJ discounted every medical opinion regarding his psychological RFC and provided invalid reasons for doing so. Docket Entry 9 at 12. But this is not so. All of the medical sources who evaluated the issue agreed that Michael could understand, retain, and follow simple instructions. (Tr. 24, 463 (Ray), 25, 468 (Brannon), 26, 554 (Smith), 28, 80, 83, 95, 97-98 (Harrison and Gregory).) The ALJ reached the same conclusion. (Tr. 21).

Additionally, to the extent the ALJ did reject a limitation set forth in one of the opinions discussed above, she gave multiple good reasons for doing so. These reasons included Michael's performance of a wide array of daily activities, little to no mental health treatment and no hospitalization related to mental health during the relevant period, and grossly normal mental status examination with only mild irritability and blunted affect.

---

[7] Michael's reliance on *Brandon K. v. O'Malley* is also unpersuasive as it is factually distinct. Docket Entry 9 at 15. *See Brandon K. v. O'Malley*, No. 22-cv-1041, 2024 WL 1331969, at \*7-8 (M.D.N.C. Mar. 28, 2024) ("[T]he ALJ appears to have based the RFC in this case largely, and inappropriately, on her

For all of the reasons set forth above, Michael's objections are unpersuasive.[7]

C. The Subjective Complaints Assessment is Legally Correct and Well Supported.

Michael's challenge to the ALJ's assessment of his subjective complaints is likewise unpersuasive. "An ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need

own interpretation of the raw medical evidence, and rejected the opinion of Plaintiff's treating neurologist in a medically complex case without any other medical review of the relevant imagining and records from 2020 through 2022.").

not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 416.929(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i)     "[The claimant's] daily activities;"
(ii)    "The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;"
(iii)   "Precipitating and aggravating factors;"
(iv)    "The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate his pain or other symptoms;"
(v)     "Treatment, other than medication, [the claimant] receive[s] or [has] received for relief of his pain or other symptoms;"
(vi)    "Any measures [the claimant] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and"

(vii)   "Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms."

20 C.F.R. § 416.929(c)(3).

Here, the ALJ completed the two-step *Craig* analysis. As a preliminary matter, the ALJ summarized Michael's subjective complaints. (Tr. 22.) Specifically, Michael alleged that he was disabled because of "motorcycle accidents. He broke his thumb and had chronic back pain. His back pain radiates down his right leg. Pain is more than 10 on a pain scale. He gets anxious. He does not get along with others. . . . He is easily sidetracked. He has problems managing his reactions." (Tr. 22, 42-59.)

The ALJ then concluded that Michael's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . ." (Tr. 22.) Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Michael's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22.)

The ALJ then gave good reasons for partially discounting Michael's subjective allegations. For example,

16

the ALJ relied on Michael's largely normal mental status examinations. The ALJ noted that Michael's orientation, memory, recall, thought processes, attention and concentration were grossly normal, though his mood/affect was sometimes mildly irritable. (Tr. 21, 24-25, 460-62, 464, 466-68, 500, 513, 540, 546-47, 553-54, 336.) This is substantial evidence undermining Michael's assertions of total disability.

Second, the ALJ pointed to Michael's extensive daily activities, which included (among other things) driving, caring for his personal needs, caring for his dog, shopping in stores, cleaning, cooking, going to bars and the racetrack, participating in a motorcycle club, and socializing with friends. (Tr. 22, 24, 27, 43, 52-53, 459, 462, 466, 331-46.) This is substantial evidence of conduct inconsistent with allegations of total disability.

Third, Michael also testified that he did not feel that he needed mental health medication (Tr. 27, 49), that he did not notice any difference with the medication he had recently tried (Tr. 50), and that he preferred instead to self-treat with marijuana (Tr. 27, 294, 451, 462, 459, 535, 542). He also reported looking for work but being unable to find it due to his prison record. (Tr. 24, 457-58 ("I went to prison when I was 19 and stayed in there for 14 years, I've been trying to get work, but no one wants to give you

work.").) This is yet more substantial evidence of conduct inconsistent with allegations of total disability. For all these reasons, the ALJ's assessment of Michael's subjective complaints is legally correct and well supported.

Fourth, this is not a case where the ALJ completely rejected all of a claimant's subjective complaints. Rather, here, for the many reasons set forth above, the ALJ concluded that Michael's symptom allegations, including those of extreme social limitations, should be partially discounted. Consequently, the ALJ limited Michael to understanding, remembering, and carrying out simple instructions that could be detailed but not complex; with no public contact and only occasional[8] contact with co-workers and supervisors; with only routine changes; and without with daily quotas. (Tr. 21.) Beyond this, it is clear from the vocational testimony that the jobs the ALJ ultimately concluded that Michael could perform (automobile detailer, store laborer, and industrial cleaner) required even "less than occasional contact with coworkers and supervisors." (Tr. 30, 63-65.) In short, the ALJ's subjective complaints analysis is legally correct, well supported, and susceptible to judicial review.

Michael's objections to the contrary are not persuasive. He asserts that the ALJ improperly discounted his

---

[8] Regulations define the term "occasional" as "occurring from very little up to one-third of the time." S.S.R. 83-10, 1983 WL 31251, at *5; S.S.R. 96-9p, 1996 WL 374185, at *3.

subjective allegations based on his limited mental health treatment without explanation and in the face of evidence that he could not afford treatment, understand the appropriate treatment, or understand the need for consistent treatment. Docket Entry 9 at 16-21.

The United States Court of Appeals for the Fourth Circuit has held that "[a] claimant may not be penalized for failing to seek treatment [he or] she cannot afford," because "'[i]t flies in the face of the patent purposes of the . . . Act to deny benefits to someone . . . too poor to obtain medical treatment that may help [her].'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

An administrative ruling provides further insight when a claimant is non-complaint with (or fails to seek) treatment as follows:

> . . . [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. [*The ALJ*] *will not find an individual's symptoms inconsistent with the evidence in the record on this basis*

*without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.* [The ALJ] may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. When [the ALJ] consider[s] the individual's treatment history, [the ALJ] may consider (but [is] not limited to) one or more of the following:

. . . .

An individual may not be able to afford treatment and may not have access to free or low-cost medical services.

. . . .

Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.

. . . .

[An ALJ] will consider and address reasons for not pursuing treatment that are pertinent to an individual's case. [The ALJ] will review the case record to determine

whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them. [*The ALJ*] *will explain how* [*he or she*] *considered the individual's reasons in* [*the ALJ's*] *evaluation of the individual's symptoms.*

SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added) (bullets omitted).

Here, the ALJ complied with both *Lovejoy* and Ruling 16-3p. She addressed Michael's ability to afford treatment by noting that as of December 1, 2023 Michael "could get treatment now that he had Medicaid, but he then said he did not believe in medications" and it was "unclear what type of treatment he was referring to." (Tr. 27, 46.) Thus, the ALJ acknowledged Michael's uninsured status until December of 2023, but

pointed to further evidence that regardless of whether he had access to mental health treatment, his preference was to self-medicate with marijuana daily (sometimes up to seven times per day). (Tr. 23, 24, 25, 27, 535, 294, 459, 462, 451, 532, 542, 549.) In fact, at one point about a year and a half before the alleged onset date, Michael was spending $400 per month on marijuana. (Tr. 23, 448.)[9]

Beyond this, even after Michael had Medicaid, the record demonstrates that he only received mental health services at Daymark twice for about a total of one hour. (Tr. 539-50.) In any event, the ALJ both acknowledged Michael's alleged inability to afford treatment and provided an explanation for why she did not find Michael's alleged lack of funds a sufficient basis to justify the minimal treatment.[10]

Beyond this, even if Michael was experiencing financial hardship, he failed to show that he did not have access to free or low-cost medical services. Thus, the ALJ was permitted

---

[9] The ALJ also states that Michael received a $13,900.00 settlement after one of his motorcycle accidents but used those funds to buy a motorcycle and a van, which would undermine his plea of poverty. (Tr. 27.) Although Michael does not challenge this finding, the ALJ does not cite to evidence of its location in the record, the Commissioner has not relied upon it in its briefing, and the Court has been unable to locate it. Thus, the Court has not relied upon it in assessing the decision for substantial evidence.

[10] Michael's reliance on *Howe v. Kijakazi*, No. 7:22-CV-66-FL, 2023 WL 5363719, at *5 (E.D.N.C. July 31, 2023) is also unpersuasive as it is factually distinct. Docket Entry 9 at 20. *Howe v. Kijakazi*, No. 7:22-CV-66-FL, 2023 WL 5363719, at *5 (E.D.N.C. July 31, 2023) ("[T]he ALJ failed to consider why Claimant was noncompliant with her medications. This was error[.]").

19

to conclude that his symptoms were not as severe as alleged. *See Dooley v. Commissioner of Soc. Sec.*, 656 F. App'x 113, 120 (6th Cir. 2016) ("[A]lthough Dooley said that he could not afford to see a specialist for mental health treatment, the record does not indicate that he ever sought mental health treatment from no-cost to low-cost providers within his community. The ALJ could therefore reasonably conclude that Dooley's failure to seek more aggressive medical treatment indicated that his pain and other symptoms were not as severe as he alleged.").

Michael's argument that the ALJ failed to explain whether his non-compliance was a symptom of his mental illness is equally unavailing. Docket Entry 9 at 21. Michael's mental impairments did not prevent him from self-medicating with marijuana daily because marijuana allegedly was the only substance that helped with his mood. (Tr. 23, 24, 25, 27, 535, 294, 459, 462, 451, 532, 542, 549.) And despite not taking any psychotropic medications, Michael never sought emergency room care

for his mental health symptoms, even though he did so for his physical complaints (Tr. 24, 26, 496-523.) Thus, the record fails to credibly demonstrate that Michael's mental illness prevented him from seeking medical treatment.

Last, assuming *arguendo* that the ALJ somehow erred here, the error was harmless. The ALJ's subjective complaints analysis turns on much more than a negative credibility determination based on a failure to seek treatment. By way of example, Michael's grossly normal mental status reports, his extensive activities of daily living, and his active search for employment were on their own substantial evidence supporting the ALJ's subjective complaints assessment.[11] While Michael disagrees and points to evidence that the ALJ already considered to argue for greater limitations, it does not follow that the ALJ's decision was erroneous or that Michael can ask this Court to reweigh the evidence to arrive at a different conclusion. For all these reasons, Michael's objection is without merit.

---

[11] *See Magruder v. Colvin*, No. 2:16-CV-15, 2016 WL 6502531, at *17 (N.D.W. Va. Oct. 14, 2016), *report and recommendation adopted*, No. 2:16-CV-15, 2016 WL 6495587 (N.D.W. Va. Nov. 2, 2016) (even if ALJ erred by holding "Plaintiff's failure to seek more extensive treatment against her," the error was harmless in light of the "otherwise thorough and well-reasoned credibility determination"); *Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *6

(M.D.N.C. Apr. 22, 2016); *Turner v. Colvin*, No. 3:12-CV-00422-MOC, 2013 WL 1181603, at *4 (W.D.N.C. Mar. 21, 2013); *McKinney v. Astrue*, No. 5:06-CV-00998, 2008 WL 754109, at *14 (S.D.W. Va. Mar. 19, 2008); *Daryl B. v. Saul*, No. 3:19CV280 (DJN), 2020 WL 1471690, at *10 (E.D. Va. Mar. 26, 2020); *Lopez v. Berryhill*, No. 16 C 10532, 2017 WL 3278844, at *6 (N.D. Ill. Aug. 2, 2017).

20

## V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

JoAnna Gibson McFadden
United States Magistrate Judge

May 6, 2026
Durham, NC

21